616 A.2d 458

Linda Rose BROCK

v.

AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY, a DIVISION of KEMPER INSURANCE
COMPANIES.

No. 440, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Dec. 2, 1992.

Mary B. Buonanno, Greenbelt, for appellant.

Robert F. Carney (John V. Church and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BISHOP and DAVIS, JJ.

DAVIS, Judge.

This is an action on a bond. Md.Transp.Code Ann. (TR), § 15–308 requires, as a condition of licensure, that an automobile dealer post a $15,000 bond with the Motor Vehicle Administration. Section 15–103(a) requires that the bond be for the benefit of the Administration "and any other person who suffers *any loss* because of a violation by the licensee [of certain provisions of the Maryland Vehicle Law]." (Emphasis added.) Section 15–103(b) provides that any person who suffers "*a loss* described in subsection (a) of this section has a right of action in his own name against the surety on the bond." (Emphasis added.)

Appellee, American Manufacturers Mutual Insurance Company, a division of Kemper Insurance Companies, issued a bond to protect Richard D. MacCorkindale, T/A Laurel Junction Auto Sales. The condition of the bond was that MacCorkindale conduct his business in full compliance with the relevant Motor Vehicle Laws. In accordance with the statute, the bond provided that it was for the benefit of the Administration "and for any person who may suffer *loss* by reason of any violation of the above-mentioned laws." (Emphasis added.)

Appellant, Linda Rose Brock, purchased from MacCorkindale a car that MacCorkindale represented had only minor grill damage but that in fact had been wrecked and declared a total loss. That misrepresentation constituted a violation of TR § 15–312, which is part of the Maryland Vehicle Law, prohibiting a dealer from making any material misrepresentation in obtaining a vehicle sales contract. It also constituted an unfair and deceptive trade practice under Md.Com. Law Code Ann. (CL), § 13–301, prohibited by § 13–303 of that article. Section 13–408(a) of the Commercial Law article provides, in relevant part, that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." Section 13–408(b) provides that any person who brings an action "to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."

Appellant sued MacCorkindale in the Circuit Court for Howard County for unfair and deceptive trade practices (Count I), breach of contract (Count II), breach of warranty (Count III), intentional interference with contractual rights (Count IV), fraud (Count V), and negligent misrepresentation (Count VI). MacCorkindale failed to answer the complaint, and appellant eventually recovered a judgment under Counts I and VI[1] for (1) $2,369 compensatory damages, (2) $190 court costs, (3) $9,798 attorney's fees, and (4) $25,000 punitive damages. The compensatory and punitive damages and the court costs were awarded under Counts I and VI. The attorney's fees were awarded under Count I only.

Apparently unable to collect these amounts from MacCorkindale, appellant made demand upon appellee, the surety. Appellee, it appears, offered to pay the $2,369 in compensatory damages but took the position that the bond did not

---

**1.** The judgment refers to Counts One and *Six* of the complaint but makes clear that the judgment was based on Deceptive Trade Practices (Count I) and *Fraud,* which was pled in Count *V.* For purposes of this appeal, it is unimportant whether the court was acting under Count V or Count VI as the validity of the judgment is not at issue here.

cover any other part of the judgment. Appellant then sued appellee, also in the Circuit Court for Howard County, for a declaratory judgment that appellee was obligated on its bond to pay the full amount of the judgment. Appellee moved for partial summary judgment, asserting its position that it was not liable for court costs, attorney's fees, or punitive damages. The court granted that motion. Its order read: "[T]hat judgment be and it is hereby entered in favor of [appellee] and against [appellant] for all sums claimed by [appellant] in her Complaint in excess of $2,369.06."

Notwithstanding the apparent lack of dispute as to the $2,369, appellant never asked for judgment in that amount, and no further judgment was entered in the case. The only right declared was that appellee was not liable for anything beyond $2,369; the court never determined that it was liable for that amount.

### Appealability—Final Judgment

It is evident that appellant presented a single claim to the court and that the court ruled on only part of it. Maryland Rule 2–602(a) provides, in relevant part, that an order, however designated, that adjudicates less than an entire claim is not a final judgment. The purpose of this Rule is to prevent piecemeal appeals by providing that only where a trial court has fully adjudicated all the issues in a case will an appeal be permitted. *See Peat, Marwick, Mitchell & Co. v. Los Angeles Rams*, 284 Md. 86, 91, 394 A.2d 801 (1978); *see also Russell v. American Sec. Bank*, 65 Md.App. 199, 499 A.2d 1320 (1985).

This Court's jurisdiction is limited to hearing appeals from final judgments. A ruling of the circuit court is not appealable unless it constitutes a final judgment. The test for finality is whether the ruling finally determines and concludes the rights involved or denies the appellant the means of further prosecuting or defending his rights in the subject matter of the proceeding. *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767 (1989); *Peat Marwick, Mitch-*

*ell & Co.*, 284 Md. at 91, 394 A.2d 801; *United Fire Ins. v. Schwartz*, 280 Md. 518, 521, 374 A.2d 896 (1977). For the ruling to be final and conclusive and thus appealable, ruling must be "intended by the court as an unqualified, final disposition of the matter in controversy." *See Sisk & Son v. Friendship Packers*, 326 Md. 152, 159, 604 A.2d 69 (1992); *see also Rohrbeck*, 318 Md. at 41, 566 A.2d 767.

Rule 2–602(b) allows the court, upon a finding that there is no just reason for delay, to direct the entry of a final judgment "pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only." Rule 2–501(e)(3) permits a court to enter summary judgment "for some but less than all of the amount requested when the claim for relief is for money only and the court reserves disposition of the balance of the amount requested."

▪▪▪ Although the anticipated function of Rule 2–501(e)(3) was to allow a court to enter a partial summary judgment in favor of the *plaintiff* where only part of the amount claimed was in dispute, we see no reason why, as worded, the Rule does not allow the converse as well. In either case, it authorizes removal from the action of that part of the claim not in dispute or as to which one party or the other is entitled to judgment as a matter of law, thereby permitting the parties and the court to focus their attention on the matters actually in dispute. To make such a determination final, however, both Rules oblige the court to make the determination required under Rule 2–602(b).

▪▪▪ That, unfortunately, has not been done here. Maryland Rule 8–602(e), however, allows this Court, upon a finding that the trial court *could* have entered judgment pursuant to Rule 2–602(b), to enter such a judgment itself. On this record, we believe that this case warrants that approach. As we indicated, there does not appear to be any dispute as to appellee's liability for the $2,369 in compensatory damages; not only did appellee offer to pay that amount before suit was filed, but in a memorandum filed in

support of its motion for partial summary judgment, it stated that, "[a]ssuming that [appellant] submits an Affidavit to this Court testifying as to the truth of the allegations contained in her complaint, [appellee] will consent to judgment in the amount of $2,369.06 against it in full satisfaction of all claims by [appellant]." It is thus clear that the whole dispute was as to the other aspects of the MacCorkindale judgment.

Although we cannot enter judgment in favor of appellant for the $2,369—that being within the sole jurisdiction of the trial court—we can make the order granting partial summary judgment in favor of appellee final, and, in the interest of judicial economy, we hereby do so. That allows us, then, to consider the merits of the appeal.

### The Merits

Both sides agree that this case turns on the meaning of the word "loss," as it appears in § 15–103. Appellee acknowledges in its brief that, because the language of the bond tracks the statutory language, the word, as used in the bond, should be given the same meaning as that used in the statute—that the bond, in other words, should not be construed in a manner inconsistent with the statute. We agree that is the proper approach.

The general question, then, is whether the word encompasses anything beyond actual compensatory damages. In fact, the parties, in their respective briefs, have narrowed the issue to whether the term allows recovery against the bond of the attorney's fees awarded as part of the underlying judgment. Appellant appears to have given up her quest against appellee for recovery of the punitive damages, for she says nothing about that in her brief. Appellee, on the other hand, presented no reason in its brief why the word "loss" would not include the $190 in court costs, although it did press the issue at oral argument. The principal issue in dispute in this appeal is whether appellee is liable for the $9,798 in attorney's fees.

Appellee, obviously, construes the word "loss," and thus its obligation under the bond, strictly. Attorney's fees are not generally recoverable against sureties, it claims, and cites a number of cases so holding. Moreover, it points out that appellant could have avoided the attorney's fees by suing directly on the bond. Section 15–103(b) gives a person "who suffers a loss described in subsection (a)" of that section "a right of action in his own name against the surety on the bond." Appellant, on the other hand, distinguishes the cases relied upon by appellee as not involving bonds posted under consumer protection laws, laws that expressly permit the recovery of attorney's fees. It relies on a Florida case, *Marshall v. W & L Enterprises Corp.*, 360 So.2d 1147 (Fla.App.1978), in which the surety *was* held liable for attorney's fees awarded in an underlying judgment against a merchant who violated the State Consumer Protection Act.

This is a case of first impression in Maryland. It is essentially a matter of statutory construction. The Legislature, as part of the State Consumer Protection Law (§ 13–408 of the Commercial Law article) specifically allowed the recovery of attorney's fees in an action to recover for injury or loss *under that section.* Merchants are not required to be bonded as part of the Consumer Protection Law. In the Motor Vehicle law (§ 15–103(a) of the Transportation article), however, the Legislature *did* require dealers to be bonded and declared that the bond was to protect any person who suffers a loss "because of a violation by the licensee ... *of those provisions of the Maryland Vehicle Law that the Administrator specifies."* (Emphasis added.)

There is nothing in this record to indicate which provisions of the Motor Vehicle Law have been specified by the Administrator for purposes of § 15–103. We note that, by regulation (COMAR 11.12.01.05B), the Administrator has declared that the bond required from dealers is for the use and benefit of the Administration "and the public who may suffer or sustain any loss by reason of any violation of the applicable sections of Subtitles 12, 13, 15, 17, and 23,

Transportation Article, Annotated Code of Maryland, by a dealer." This regulation, unfortunately, is most unilluminating, not only because the reference to "Subtitles" is ambiguous, the intended reference probably being "Titles" of the article but also because the reader is left to speculate which sections are indeed "applicable."

■ In the prefatory allegations of her complaint against MacCorkindale, appellant mentioned two specific violations by the defendant—COMAR 11.12.01.14 J.4, which requires a dealer to identify conspicuously the former condition of a vehicle that had been previously wrecked; and TR § 13–113(e)(2), which requires dealers to remit title documents and fees to the Administration within a certain period of time. Appellant did not allege that she suffered any loss by reason of the second of these violations.[2] In Count I, upon which the attorney's fees were awarded, she complained that MacCorkindale

engaged in unfair and deceptive trade practices prohibited by the Commercial Law of Maryland in consumer automobile sales transactions, in subcounts, in that they:

(a) failed to state material facts, and

(b) made misleading statements, and

(c) committed deception, and

(d) committed fraud, and

(e) committed misrepresentation, or

(f) committed knowing concealment, suppression or omission of material facts in the above-noted consumer automobile sale in that Defendants deceived the Plaintiff by representing that the vehicle sold Plaintiff only previ-

---

**2.** Although Brock cited a violation of a provision of the Maryland Vehicle Law, *i.e.* TR § 13–113(e)(2), significantly, for purposes of our analysis, she alleged that her loss resulted from failure of the dealer to identify conspicuously the condition of the vehicle that had previously been wrecked; she did not assign the dealer's failure to remit title documents and fees to the Administration as having caused her loss. We do not believe Section 15–103(a) contemplates a violation of COMAR.

ously had minor damage done to it, all subcounts to Plaintiff's damage.

Each of these alleged acts would constitute an unfair or deceptive trade practice under CL § 13–301. None of them has specific reference to any provision in the Maryland Vehicle Law, however, which consists of the referenced sections of Subtitle 12, 13, 15, 17 and 23 of the Transportation Article, Md.Ann.Code. It seems evident, therefore, that the judgment entered on Count I arose not from any section of the Motor Vehicle Law but rather from CL §§ 13–301, 13–303, and 13–408. Indeed, it is only under § 13–408 that attorney's fees could be awarded. From this, we conclude that the attorney's fees, even if regarded generally as a "loss," did not constitute a loss because of a violation of a provision of the Motor Vehicle Law that the Administrator had specified. For that reason, and that alone, we hold that the court did not err in determining that appellant had no claim against the bond for the attorney's fees.

■ As noted, the court also determined that appellant could not recover on the bond for the $190 in court costs paid by her in the action against MacCorkindale. We believe that the court's ruling was proper. Although successful plaintiffs are usually entitled to reimbursement for prepaid court costs, Md.Rule 2–603, under TR § 15–103(b), appellant, had she been willing to forego her claim for punitive damages, could have sued directly on the bond and avoided the action against MacCorkindale. While she was entitled to sue the actual tortfeasor for punitive damages, she could not recover court costs in her action on the bond. The unreimbursed court costs, in our view, do not constitute a "loss" to her arising from whatever violation of the Maryland Vehicle Law would have produced the compensatory damage that appellee was willing to pay. For these reasons, we conclude that recovery should not be allowed for the court costs.

JUDGMENT AFFIRMED.
COSTS TO BE PAID BY APPELLANT.