807 A.2d 139

**ROMANO & MITCHELL, CHARTERED**

v.

**Stephen C. LAPOINTE.**

No. 1549, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Sept. 9, 2002.

Barton D. Moorstein (Blank & Moorstein, LLP, on the brief) Rockville, for appellant.

John M.G. Murphy (Barry L. Gogel and Ober, Kaler, Grimes & Shriver, P.C., on the brief) Baltimore, for appellee.

Argued before ADKINS, BARBERA, WILLIAM W. WENNER, (Retired, specially assigned), JJ.

BARBERA, Judge.

This case proves, in two respects, an exception to the rules of appellate engagement. It is the rare case in which we accept as a final appealable judgment the resolution of only one claim of a multi-claim lawsuit. And, it is a case in which we are asked to decide no issue *other than* whether the judgment is final and appealable.

The appeal stems from the Circuit Court for Montgomery County's certifying as a final judgment its order confirming an arbitration award. The award arose out of a dispute concerning compensation owed Stephen C. LaPointe ("LaPointe"), a certified public accountant and appellee here, by his former employer, the accounting firm of Romano and Mitchell, Chartered ("R & M"), appellant. LaPointe filed suit and the circuit court ordered the parties to arbitration pursuant to a provision of the parties' employment agreement.

The arbitration panel awarded LaPointe monies owed him in back wages and bonuses. At the request of LaPointe and over the objection of R & M, the court confirmed the award. Still pending was R & M's counterclaim alleging that LaPointe had violated the non-compete clause of the parties' agreement after having been terminated by R & M. Notwithstanding the pendency of R & M's counterclaim, the court certified the arbitration award as final.

R & M appealed and presents the following question for our review, which we have rephrased slightly:

Whether the circuit court erred or abused its discretion by entering final judgment on LaPointe's behalf notwithstanding the pendency of the counterclaim and without LaPointe's having requested that the judgment be certified as final pursuant to Maryland Rule 2–602(b).

Finding no error or abuse of discretion, we affirm the decision of the circuit court.

## FACTUAL BACKGROUND AND
## LEGAL PROCEEDINGS

R & M and LaPointe entered into their original employment agreement in 1989. Under its terms, LaPointe "agree[d] to devote such time, skill and attention as may be required" in rendering professional accounting services on behalf of R & M. In turn, R & M agreed to pay LaPointe a salary, benefits, and additional compensation in the form of bonuses for new clients LaPointe secured. The parties thereafter executed a Letter of Intent and Agreement, which modified certain compensation provisions of the original agreement and incorporated by reference the non-compete clause of the original agreement.

In March 1999, LaPointe filed a five-count complaint alleging that R & M had breached the agreement by failing to pay him certain wages and bonuses. On receipt of the complaint, R & M terminated LaPointe.

LaPointe then filed a ten-count amended complaint, adding, *inter alia,* a claim of wrongful termination. Meanwhile, the court granted R & M's motions to stay court proceedings and compel arbitration of the wage and bonus dispute. The court's order provided that the matter be referred to arbitration "in accordance with the arbitration procedures set forth in the Employment Agreement, or as otherwise agreed by the parties . . . ."

A full evidentiary hearing commenced before the arbitration panel on May 31, 2000, and continued on June 1, 2000 and July 24, 2000. Eight months later, the arbitration panel issued its written decision and award to LaPointe of $153,016.50 in back wages and bonuses, plus interest. R & M filed a request for reconsideration of the panel's decision.

Before the arbitration panel ruled on R & M's reconsideration request, LaPointe filed a petition for confirmation of the award and for entry and enforcement of judgment. R & M opposed the petition, and the court declined to confirm the award during the pendency of the reconsideration request.

While awaiting the arbitration panel's decision on reconsideration, R & M filed a counterclaim alleging that LaPointe had violated the non-compete clause of the employment agreement. In particular, R & M averred that LaPointe began rendering accounting services for a former R & M client prior to the expiration of the twelve-month restriction set forth in the non-compete clause. Unlike LaPointe's claims, R & M's counterclaim was not among those that were subject to arbitration under the agreement.[1]

LaPointe timely answered, denying all liability and setting forth a number of affirmative defenses. LaPointe also filed a motion to dismiss or for summary judgment, or in the alternative, to strike the counterclaim, and a motion for attorney's fees. LaPointe asserted as grounds for the latter that R & M's counterclaim had been filed solely to delay payment of the arbitration award. R & M answered, contending that the factual and legal basis of LaPointe's motion for attorney's fees was "erroneous and misleading." R & M also requested attorney's fees.

During this time, the arbitration panel denied R & M's request for reconsideration. This prompted LaPointe to renew his petition for confirmation of the arbitration award and for entry and enforcement of judgment. R & M again opposed the petition, this time on the ground that R & M's counterclaim was pending in the circuit court.

On August 15, 2001, the court held a hearing on LaPointe's motions to dismiss the counterclaim and to confirm the arbitration award, and the parties' requests for attorney's fees. With regard to confirmation of the award, the court asked LaPointe if there was any reason why the court could not

---

1. The parties' agreement stated, in pertinent part: "[A]ny controversies or claims arising out of, or relating to this Agreement, or the breach thereof, except those arising out of the restrictive covenants contained in Section 7, Section 8, and Section 10, shall be settled by arbitration." Section 10, of relevance here, provided that for a period of twelve months following the termination of the agreement, LaPointe will not render or perform accounting services for any client of R & M, "except as in the capacity as a fulltime employee."

enforce the award and let the counterclaim go forward independently. The following discussion occurred:

> THE COURT: My question to you is, why can't the arbitration award be enforced and you still go to trial on the counterclaim?
>
> [COUNSEL FOR LAPOINTE]: No reason whatsoever, and I would respectfully ask the Court to do that, confirm the award, put it in place, we'll deal with the counterclaim as appropriate, which we didn't have to but we will. They [R & M] don't want you to confirm the award.
>
> THE COURT: I understand that, but it seems to me procedurally, there's nothing to prohibit the Court from doing it other than, there's no rule that says you can't—the law is now, it didn't used to be, but the Court of Special Appeals made it very clear that these cases can clearly be dealt with in parts when there are counterclaims, that the counterclaim is a live, viable entity out there.

Counsel for R & M did not object or otherwise respond to the court's contemplated action.

At the conclusion of the hearing, the court confirmed the arbitration award but denied both LaPointe's motion to dismiss the counterclaim and the parties' requests for attorneys' fees. Thereafter, the court entered a written order that read, in pertinent part: "[I]t appears to the Court that there is no just reason for delay, that the arbitration award should be confirmed, and that final judgment should be entered thereon," and R & M "may proceed with its Counterclaim independent of this judgment." From that order, R & M filed this timely appeal.

## DISCUSSION

R & M's only challenge on appeal relates not to the merits of the court's confirmation of the arbitration award but, instead, to the court's certification of the award as a final judgment under Rule 2–602(b). R & M specifies that the court erred or abused its discretion by: (1) certifying the award as a final judgment irrespective of the pendency of a

counterclaim; and (2) entering a final judgment notwithstanding LaPointe's failure to make a specific request that the judgment be certified as final. Putting aside the question of why R & M has chosen to bring this appeal for the sole purpose of asking whether there *should be* an appeal, we focus only upon the issue R & M presents for our consideration. That issue calls upon us to determine whether this is one of those rare cases for which Rule 2–602(b) was promulgated. For the reasons that follow, we hold that it is.

## I.

"The right to seek appellate review ordinarily must await the entry of a final judgment, disposing of all claims against all parties." *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549 (1999); Md.Code (1973, 1998 Repl.Vol.), § 12–301 of the Courts & Judicial Proceedings Article. Three exceptions to this rule exist in Maryland: (1) appeals from interlocutory rulings allowed by statute; (2) appeals from interlocutory rulings permitted under the collateral order doctrine; and (3) appeals permitted under Maryland Rule 2–602(b). *Shoemaker,* 353 Md. at 165, 725 A.2d 549. Only the third exception—that which is provided by Rule 2–602(b)—is at issue in this appeal.

Maryland Rule 2–602 states, in pertinent part:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

At the outset, we recognize that Rule 2–602(b) "is not a grant of unlimited discretion to the trial judge." *Canterbury Riding Condominium v. Chesapeake Investors, Inc.,* 66 Md.App. 635, 642, 505 A.2d 858 (1986). Rather, it "provides a limited and tightly circumscribed exception" to the general rule set forth in subsection (a). *Tharp v. Disabled American Veterans Dep't of Maryland, Inc.,* 121 Md.App. 548, 553, 710 A.2d 378 (1998).

█ A prerequisite for the entry of a final judgment under Rule 2–602(b) "is an order that, absent the existence of multiple parties or multiple claims, would be final in the traditional sense." *Jenkins v. Jenkins,* 112 Md.App. 390, 424, 685 A.2d 817 (1996), *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997). As the Court of Appeals described it in *Snowden v. Baltimore Gas & Electric Co.,* 300 Md. 555, 563, 479 A.2d 1329 (1984), a trial judge's authority under Rule 2–602(b) to certify certain orders as final and appealable "is limited to orders which, by their nature, have a characteristic of finality." Said differently, a claim that is the subject of Rule 2–602(b) certification must be "totally decided." *Canterbury,* 66 Md.App. at 644, 505 A.2d 858.

█ Rule 2–602(b) contains the additional requirements that the order certifying a final judgment be in writing and that it explicitly state that there is "no just reason for delay." *Tall v. Bd. of Sch. Comm'rs of Baltimore City,* 120 Md.App. 236, 242, 706 A.2d 659 (1998). Unless both requirements are satisfied, the appellate court is without jurisdiction to hear the appeal and will not reach the question whether the trial court's certification of finality was a proper exercise of discretion.

*Tharp,* 121 Md.App. at 561, 710 A.2d 378 (stating that, without an express determination of no just reason for delay, "there is naught for us to review because our jurisdiction is wanting" (citations omitted)); *accord Waters v. U.S.F. & G. Co.,* 328 Md. 700, 708–09, 616 A.2d 884 (1992).

■ Underlying the entirety of Rule 2–602 is the policy that "'piecemeal appeals are disfavored.'" *NRT Mid–Atlantic v. Innovative Properties,* 144 Md.App. 263, 274, 797 A.2d 824 (2002) (quoting *Cant v. Bartlett,* 292 Md. 611, 614, 440 A.2d 388 (1982)). Thus, the trial court's exercise of its discretionary authority under Rule 2–602(b) is subjected to "close appellate scrutiny." *Tharp,* 121 Md.App. at 562, 710 A.2d 378; *accord Diener Enters., Inc. v. Miller,* 266 Md. 551, 555, 295 A.2d 470 (1972); *Edwards v. First Nat'l Bank of North East,* 122 Md.App. 96, 101–02 n. 2, 712 A.2d 33 (1998). Indeed, the standard by which we assess the circuit court's discretionary decision is "far less deferential than is generally the case with respect to discretionary rulings." *Tharp,* 121 Md.App. at 563, 710 A.2d 378. We will not hesitate to substitute our judgment for that of the trial court, because "[w]hat is implicated is the ability of the appellate court, in questionable or borderline cases, to control its own docket." *Id.* With that legal framework in mind, we turn to the case *sub judice.*

■ We note preliminarily that R & M does not contend that the arbitration award lacks the characteristic of finality required by the rule and without which a trial court is unauthorized to make a final judgment certification under Rule 2–602(b). In any event, there is no question but that the confirmed arbitration award has the requisite characteristic of finality, having been totally decided below.

Nor does R & M suggest that the court failed to satisfy the additional requirements of Rule 2–602(b) that there be a written order that includes a statement of no just reason for delay. The court's order in this case is in writing and contains the incantation that there is "no just reason for delay."

We therefore turn to R & M's contention that the court abused its discretion in certifying the arbitration award as

final. As we have said, the underlying policy of Rule 2–602(b) is the avoidance of piecemeal appeals. For this reason, the Court of Appeals and this Court have repeatedly cautioned trial judges that, in determining whether Rule 2–602(b) should be invoked, they "should balance the exigencies of the case . . . with the policy against piecemeal appeals and then only allow a separate appeal in the *very infrequent harsh case." Diener,* 266 Md. at 556, 295 A.2d 470 (emphasis added); *accord Planning Bd. of Howard Co. v. Mortimer,* 310 Md. 639, 648, 530 A.2d 1237 (1987) (stating that invocation of Rule 2–602(b) is for the "exceptional case," and that "[t]he exercise of discretion . . . should not be routinely exercised"); *Canterbury,* 66 Md.App. at 649, 505 A.2d 858 (recognizing that a strong policy consideration against certification "has always been" to "prevent piecemeal appeals as far as possible and to avoid thereby the confusion, delay, and expense which would be caused by having two or more appeals in the same suit."). *See also Allstate Ins. Co. v. Angeletti,* 71 Md.App. 210, 218, 524 A.2d 798 (1987) (citations omitted) (noting that there has been "no similar inclination by our Court of Appeals to retreat from the suggestion that the certification procedure ought to be reserved for 'the very infrequent harsh case[s].' " (citations omitted)).

The instant case is the very infrequent harsh case in which the Rule 2–602(b) certification procedure is decidedly appropriate. R & M's counterclaim for violation of the non-compete clause is entirely separate from, and relies not at all on, the facts and legal issues that underlay the dispute that precipitated the now confirmed arbitration award. Although R & M asserts that "the same legal issues argued in this case could be back before the Court later," R & M does not share with us what those issues might be, and we cannot identify any such issue. As we see it, R & M's counterclaim that LaPointe violated the non-compete clause of their agreement is based on events subsequent to those that led to the arbitration award, and will require no further revisiting, either at trial or on appeal, of the facts that were involved in the prior wage and bonus dispute.

We do not subscribe to R & M's apparent view that the mere existence of the unresolved counterclaim automatically renders inappropriate a judge's Rule 2–602(b) certification of a fully litigated claim. Indeed, the United States Supreme Court has explicitly rejected such an interpretation of Fed. R. Civ. Proc. 54(b), upon which Rule 2–602(b) is modeled. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 9, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). The Court explained in *Curtiss–Wright* that "counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims. Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Id.* (citations omitted).

To be sure, we have recognized in the past that the Supreme Court has imposed a more deferential standard in reviewing whether a trial judge properly certified a case under Rule 54(b) than we do in Maryland under Rule 2–602(b). *See Tharp,* 121 Md.App. at 573 n. 4, 710 A.2d 378. We have also recognized, however, that interpretations of the federal rule are "especially persuasive in determining the meaning of its Maryland counterpart." *Canterbury,* 66 Md.App. at 641, 505 A.2d 858. We find *Curtiss–Wright* persuasive and, applying its rationale to the instant case, we see no meaningful interrelationship between the claim that produced the arbitration award and the counterclaim that remains to be resolved.

It is also noteworthy that the parties' agreement calls for LaPointe's alleged violation of the non-compete clause to be litigated, not before an arbitration panel, but in circuit court. *See supra* note 1. As such, if and when this Court were called upon to review a ruling on the counterclaim, our standard of review would be quite different from the highly circumscribed review that the courts at every level give to arbitration decisions. *See Bd. of Educ. of Prince George's Co. v. Prince George's Co. Educators' Ass'n,* 309 Md. 85, 98, 522 A.2d 931 (1987). Where, as here, some of the parties' claims are subject to arbitration and others are not, those claims that

produce an arbitration award that has been reviewed and confirmed by the court would seem to be among the best candidates for certification of finality under Rule 2–602(b).

■ R & M suggests that we should reverse the court's order because there is a strong likelihood of further appeal. There may or may not be another appeal before this litigation wends its way to ultimate conclusion. Regardless, R & M's assertion could be made in any case in which the provisions of Rule 2–602(b) have been invoked. We do not consider that the mere possibility of subsequent appeals, without more, renders the court's certification decision an abuse of discretion.

Nor is there a danger that we will be asked at some future time to revisit the issue presented by this appeal. As we have said, R & M raises no issue relating to the merits of the arbitration award; instead, R & M asks *only* whether the trial court properly certified the arbitration award as final and appealable.

R & M also argues that the facts in the case *sub judice* do not produce hardship or unfairness for LaPointe and, thus, this is not the infrequent harsh case for which Rule 2–602(b) was designed. We disagree.

In *Canterbury,* we cited *Curtiss–Wright* as providing an example of a case where a substantial hardship would have resulted from delay. We had this to say about *Curtiss–Wright:*

Prominent among the harsh and adverse effects that delay might sometime work is a harsh economic effect. In *Curtiss–Wright* [ ], the Supreme Court, as it approved the exercise of discretion by the trial judge, gave a vivid example of what might qualify as a harsh economic effect. In that case ... the district court had determined that it might be many months, if not years, before the pending counterclaims might be decided; that the plaintiff's claim was liquidated and large ... and that the difference between prejudgment and market interest rates would cause the

plaintiff to suffer a severe daily financial loss unless certification was granted.

66 Md.App. at 652, 505 A.2d 858 (citations omitted).

The compensation dispute between LaPointe and R & M arose in 1999. The matter has been fully arbitrated and the award has been confirmed by a court of law. And, notably, R & M does not raise any appellate challenge to the award itself. Put simply, the time has come for LaPointe to be paid the monies that the arbitration panel has concluded are due him. Any further delay in his collecting the arbitration award to which he is entitled would prove an economic hardship and certainly be unfair.

As we assess the propriety of the court's certification of finality in this case, we recognize that the Court of Appeals and this Court have regularly dismissed appeals brought under the auspices of Rule 2–602(b). Those dismissals have been for a variety of reasons, none of which is present in this case. This is not a case in which the trial court failed to satisfy the requirements of a written order that includes a statement of no just reason for delay. *Tharp,* 121 Md.App. at 559, 710 A.2d 378. Neither is this a case in which the record evidences no effort on the part of the judge to explain why Rule 2–602(b) certification was appropriate. *See, e.g., Waters,* 328 Md. at 708–09, 616 A.2d 884 (1992); *Blucher v. Ekstrom,* 309 Md. 458, 462, 524 A.2d 1235 (1987); *Murphy v. Steele Software Systems Corp.,* 144 Md.App. 384, 394–95, 798 A.2d 1149 (2002); *Robert v. Robert,* 56 Md.App. 317, 322–23, 467 A.2d 798 (1983). Nor is this a case where the order of finality does not dispose of an entire claim. *See, e.g., Huber v. Nationwide Mutual Insurance Co.,* 347 Md. 415, 420, 701 A.2d 415 (1997); *Shenasky v. Gunter,* 339 Md. 636, 638, 664 A.2d 882 (1995).

To the contrary, this case is an example of precisely why Rule 2–602(b) was promulgated. The trial court correctly recognized it as such and, having complied with the conditions precedent set out in the rule, exercised proper discretion in

certifying the confirmed arbitration award as final and appealable. We shall not disturb that decision.

## II.

■ R & M's second argument for why the court erred in granting Rule 2–602(b) certification need not detain us long. R & M claims that the court was not authorized to certify the arbitration award as final because its order was not preceded by LaPointe's filing a motion specifically requesting certification. R & M also mounts the closely related argument that the lack of a motion by LaPointe and hearing on the issue of certification of finality violated R & M's due process entitlement to notice and opportunity to be heard.

We do not reach the merits of R & M's complaint because it is being raised for the first time on appeal. The court could have stated more explicitly at the motions hearing that it was contemplating invoking the provisions of Rule 2–602(b). Nevertheless, our review of the record convinces us that R & M was aware of the court's intention not only to confirm the award but also to make it a final judgment.

LaPointe specifically requested in his motion for confirmation of the arbitration award that the court also enter judgment on it and declare it enforceable. Moreover, at the outset of the motions hearing, the court reviewed with the parties that among the matters to be addressed was LaPointe's motion to enforce the award. And, at one point in the hearing, the court asked counsel for LaPointe: "My question to you is, why can't the arbitration award be enforced and you still go to trial on the counterclaim?", to which LaPointe's counsel replied: "I would respectfully ask the Court to do that. . . ." R & M said nothing in response to this exchange.

In light of all of this, it was incumbent upon R & M to complain at the hearing that the court ought not declare its order confirming the award final. Even if we were to give R & M the benefit of the doubt on that score, and assume that R & M was surprised by the court's subsequent order certifying

the award as a final judgment, R & M took no steps by way of a post-judgment motion to contest the order.

 Maryland Rule 8–131(a) states that, "[o]rdinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . ." The "primary purpose of Rule 8–131(a) is to ensure fairness for all parties in a case . . .," which is accomplished by "requir[ing] counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Davis v. DiPino*, 337 Md. 642, 647–48, 655 A.2d 401 (1995) (citations omitted). R & M's claim that the court's order of finality was done without notice and an opportunity to be heard, made for the first time in this Court, simply comes too late and we decline to review it.

 That said, we nevertheless note that, even though a Rule 2–602(b) certification might often be precipitated by the motion of one or both parties, the rule in no way suggests such a requirement.[2] Moreover, the appellate courts have the authority under Maryland Rule 8–602(e) to render a judgment final, even in those instances when neither the parties nor the lower court have put the matter at issue. Thus, even if R & M's complaint regarding lack of notice were properly before us, we would have found it to be without merit.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

2.　Ideally, a court contemplating Rule 2–602(b) certification should give the parties the opportunity to address the matter and, thereafter, the court should fully explain its rationale for certification. This Court recently dismissed an appeal brought pursuant to Rule 2–602(b) because the trial court's *pro forma* order of certification, done "without hearing and without articulation of a comprehensive consideration of all relevant factors," left this Court "unable to discern the existence of 'no just reason for delay.'" *Murphy v. Steele Software Systems Corp.*, 144 Md.App. 384, 394–95, 798 A.2d 1149 (2002).